IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>ANY AND ALL FUNDS MAINTAINED AT<br>BANCO GENERAL (PANAMA), N.A., IN<br>THE NAME OF OR ON BEHALF OF ISMAEL<br>ESTRADA OR ISMAEL ROBERTO ESTRADA<br>RODRIGUEZ, INCLUDING 1,029 SHARES<br>OF PERMAL GLOBAL HIGH YIELD<br>(INVESTMENT ACCOUNT NUMBER XX96;<br>ACCOUNT NUMBER XX-XX-XX-XXX6114;<br>ACCOUNT NUMBER XX-XX-XX-XXX0490;<br>ACCOUNT NUMBER XX-XX-XX-XXX2917;<br>ACCOUNT NUMBER XX-XX-XX—XXX3781; and<br>ACCOUNT NUMBER XX-XX-XX-XXX9620,<br><br>        Defendants. | CIVIL ACTION NO.<br><br>1:08-CV-1688-CC |

## AMENDED COMPLAINT FOR FORFEITURE

COMES NOW the United States of America, Plaintiff in this matter, and shows the Court the following in support of this Amended Complaint for Forfeiture:

### Jurisdiction and Venue

1.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1355.

2.

Venue is proper in this Court pursuant to 28 U.S.C. § 1395.

3.

28 U.S.C. § 1355(b)(2) provides that "[w]henever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought" as permitted by 28 U.S.C. §§ 1355(b)(1) and 1395.

4.

28 U.S.C. §§ 1355(b)(1) and 1395 allow the United States to prosecute a forfeiture proceeding in the court of the district where any of the acts or omissions giving rise to the forfeiture occurred or in the district where the forfeiture accrues.

5.

Pursuant to the investigation discussed below, on March 17, 2006, the Honorable Alan J. Baverman, United States Magistrate Judge for the Northern District of Georgia, issued seizure warrant number 1:06-MJ-339, authorizing agents to seize all of the funds maintained in Banco General (Panama) N.A., ("Banco General") in the name of or on behalf of Ismael Estrada or Ismael Roberto Estrada Rodriguez, including but not limited to, account number XX-XX-XX-XXX6114.

6.

On or about April 4, 2006, the United States Department of Justice filed a request to restrain funds and provide bank records

pursuant to a Mutual Legal Assistance Treaty ("MLAT") in effect between the United States and Panama, indicating that the following funds are believed to be proceeds traceable to violations discussed below and are currently present in Panama: any and all funds maintained in Banco General (Panama) N.A., in the name of or on behalf of Ismael Estrada or Ismael Roberto Estrada Rodriguez, including but not limited to, account number XX-XX-XX-XXX6114.

7.

On or around April 7, 2006, the Panamanian authorities approved the MLAT request and issued an Order to Banco General, instructing the bank to freeze all of the funds in any and all accounts held by Ismael Estrada at Banco General. Banco General froze the funds in the name of Ismael Estrada which consisted of: approximately $99,271.93 from savings account number XX-XX-XX-XXX6114; approximately $477.06 from checking account number XX-XX-XX-XXX0490; approximately $301.07 from checking account number XX-XX-XX-XXX2917; approximately $2,405.80 from savings account number XX-XX-XX-XXX3781; approximately $1,104.29 from savings account number XX-XX-XX-XXX9620; and approximately 1,029.47 shares in Permal Global High Yield, a mutual fund (Banco General investment account number XX96) (collectively hereafter, the seized assets will be referred to as the "Defendant Funds").

## The Facts and Circumstances Supporting Forfeiture

8.

During the course of an ongoing investigation by the DEA in Atlanta, Georgia, agents began investigating the narcotics trafficking activities of Ismael Estrada, a/k/a Manolo Cruz ("Estrada") in April 2005.

9.

Based on court-authorized surveillance of Estrada and other members of his narcotics ring, DEA agents determined that Estrada and his cohorts were actively distributing multiple kilograms of cocaine in Atlanta, Georgia, and elsewhere.

10.

For example, on May 27, 2005, the agents intercepted a telephone call during which Estrada agreed to purchase illegal narcotics from a person identified only as "Guerro."

11.

The agents also intercepted several telephone calls between Estrada and other members of the drug trafficking organization. During one of these calls, Estrada gave specific details describing the physical appearance and destination of Leslie Anderson ("Anderson") who was en route to a meeting with a cocaine supplier. Later, DEA surveillance observed Anderson meeting with known drug traffickers at a parking lot in Atlanta.

12.

On March 1, 2006, DEA agents interviewed a Cooperating Defendant ("CD1") who had been recently arrested on drug trafficking charges and was cooperating with law enforcement. CD1 stated that he had purchased cocaine from Estrada on two occasions in July 2005. CD1 paid Estrada for the drugs later in July, in three different meetings. The total amount CD1 paid Estrada for the cocaine was $97,000 in cash.

13.

On November 4, 2005, DEA agents interviewed another Cooperating Defendant ("CD2"), who had also been recently arrested on drug trafficking charges and was cooperating with law enforcement. CD2 stated that he purchased cocaine from Estrada on a regular basis in the eight months prior to CD2's arrest. CD2 reported that he would contact Estrada to obtain a meeting point, and then Anderson would deliver the cocaine to him. CD2 would take the drugs and then bring cash payment back to Estrada every two or three days, at a house in Atlanta. Each cash delivery was between $100,000 to $200,000.

14.

Several bank accounts for both Estrada and Anderson were identified, both in the United States and abroad. Specifically, three accounts belonging to Estrada were identified at Bank of America, account numbers x-9419, x-6297, and x-4415. An analysis

of the cash deposits to each of these bank accounts in and around the time of each cooperating defendant's narcotics transactions with Estrada corroborates the stories of both CD1 and CD2.

15.

Bank records show that, during calendar year 2005, Estrada's three Bank of America accounts received cash and check deposits of approximately $322,590.

16.

During August and September 2005, Estrada's three Bank of America accounts received cash deposits of $68,000. These deposits were made in whole dollar amounts, typically in $3,000 or $5,000 increments, under the $10,000 Currency Transaction Reporting limit found in 31 U.S.C. § 5313.

17.

Bank records indicate that, of the above-referenced $68,000 in cash deposits, Estrada's Bank of America account number x-9419 received $35,000 of that cash during August and September 2005. The cash deposits to that account were also made in rounded whole dollar amounts, generally for either $3,000 or $5,000, under the $10,000 Currency Transaction Reporting limit.

18.

Deposits of whole dollar amounts are not typical of deposits associated with legitimate business transactions. Deposits of whole dollar amounts are typical of drug trafficking operations.

19.

Estrada also frequently transferred narcotics proceeds among his different bank accounts. For example, on September 26, 2005, Estrada wrote a check to himself for $10,000 off his Bank of America account number x-6297, and deposited that check into his Bank of America account x-9419.

20.

During 2005, Estrada wrote three checks to himself from his Bank of America account number x-9419 and deposited those checks into Banco General savings account no. XX-XX-XX-XXX6114. Specifically, those checks were identified as follows: Check No. 1158 dated June 21, 2005, in the amount of $50,000; Check No. 1167 dated September 19, 2005, in the amount of $30,000; and Check No. 1169 dated October 5, 2005, in the amount of $10,000.

21.

It is not uncommon for drug traffickers to move assets outside of the United States in an attempt to avoid detection and seizure of those assets by law enforcement.

22.

On March 21, 2006, a Grand Jury sitting in the Northern District of Georgia returned an indictment charging fourteen individuals, including Estrada and Anderson, with federal drug trafficking and money laundering offenses. See Criminal Indictment No. 1:06-CR-380-RWS.

23.

All of the individuals charged in the March 21, 2006 indictment, except for Estrada, have now pled guilty. Estrada, however, is currently incarcerated in Mexico awaiting extradition to the United States.

24.

On August 28, 2006, the United States filed a Complaint for Forfeiture in this district pursuant to 21 U.S.C. § 881(a)(6) against domestic assets seized from Estrada and/or Anderson on March 17, 2006, including the three Bank of America accounts held by Estrada, account numbers x-4415, x-6297, and x-9419. See United States v. 250 Park Avenue West, #504, et al., Case Number 1:06-CV-2023-WSD.

25.

On May 7, 2007, the Court granted a judgment of default in that civil forfeiture action, against most of the defendant domestic assets, including Estrada's Bank of America account number x-4415, as well as account numbers x-6297 and x-9419 that funded the savings bank account (account no. XXX6114) at Banco General.

26.

Estrada owned a business known as Gumpy's Wings and Fish. Estrada used the business to launder the proceeds from his illegal drug trafficking activities. In addition, he laundered his ill-gotten gains through Choice Properties Group, a real estate

development company owned and operated by Lee Sellers (Sellers), Estrada's cousin. To launder his narcotics proceeds through Choice Properties Group, Estrada would often give cash to Sellers who would then write a check off the company's account back to Estrada, including a notation of "investment" or "proceeds of sale" in the memo line of the check. Alternatively, Estrada would give Sellers cash to pay contractors to renovate a house purchased by Choice Properties Group. Once the house was sold, Estrada would receive his money back from the sales proceeds.

27.

Monies from Gumpy's Wings and Fish, as well as from Choice Properties Group, were deposited into Estrada's bank account (account no. XXX6114) at Banco General.

28.

Estrada transferred funds from account number XXX6114 to account number XX-XX-XX-XXX0490 and account number XX-XX-XX-XXX3781 at Banco General.

29.

On September 11, 2005, Estrada purchased 500 shares of Global High Yield (Dividend) for $348,411.00, using funds from his bank account (number XXX6114) at Banco General.

30.

On March 3, 2006, Estrada purchased additional shares of Global High Yield for $9,999.84 and $346,493.41, using funds from

his bank account (number XXX6114) at Banco General.

31.

Based on the above, the Defendant Funds at Banco General in the name of or on behalf of Ismael Estrada or Ismael Roberto Estrada Rodriguez, more particularly described as approximately $99,271.93 from savings account number XX-XX-XX-XXX6114; approximately $477.06 from checking account number XX-XX-XX-XXX0490; approximately $301.07 from checking account number XX-XX-XX-XXX2917; approximately $2,405.80 from savings account number XX-XX-XX-XXX3781; approximately $1,104.29 from savings account number XX-XX-XX-XXX9620; and approximately 1,029.47 shares in Permal Global High Yield, a mutual fund (investment account number XX96), are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that they constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957.

32.

Similarly, based on the above, the Defendant Funds maintained at the accounts in Banco General (described in paragraph 31, above) are also subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) in that they constitute moneys or things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to an exchange for a controlled substance.

WHEREFORE, Plaintiff prays:

(a) that the Defendant Funds be forfeited to the United States;

(c) that the United States recover its costs incurred in this action; and

(d) that the United States have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 25th day of August, 2009.

                                        Respectfully submitted,

                                        SALLY QUILLIAN YATES
                                        ACTING UNITED STATES ATTORNEY

                                        /s/ Dahil D. Goss
                                        DAHIL D. GOSS
                                        ASSISTANT U.S. ATTORNEY
                                        GEORGIA BAR NO. 302905

600 United States Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6245
Fax: (404) 581-6234
Dahil.Goss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | |
| : | 1:08-CV-1688-CC |
| ANY AND ALL FUNDS MAINTAINED AT : | |
| BANCO GENERAL (PANAMA), N.A., IN : | |
| THE NAME OF OR ON BEHALF OF ISMAEL : | |
| ESTRADA OR ISMAEL ROBERTO ESTRADA : | |
| RODRIGUEZ, INCLUDING 1,029 SHARES : | |
| OF PERMAL GLOBAL HIGH YIELD : | |
| (INVESTMENT ACCOUNT NUMBER XX96; : | |
| ACCOUN NUMBER XX-XX-XX-XXX6114; : | |
| ACCOUNT NUMBER XX-XX-XX-XXX0490; : | |
| ACCOUNT NUMBER XX-XX-XX-XXX2917; : | |
| ACCOUNT NUMBER XX-XX-XX—XXX3781; and : | |
| ACCOUNT NUMBER XX-XX-XX-XXX9620, : | |
| : | |
| Defendants. : | |

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Task Force Officer Dwayne Gooden, declare under penalty of perjury, as provided by 28 United States Code, Section 1746, the following:

That the foregoing Amended Complaint for Forfeiture is based upon my knowledge, information furnished to me by other law enforcement agents and officers in the course of their official duties, and by information obtained from persons involved with this investigation. The information contained in the Amended Complaint for Forfeiture is true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This **25** day of August, 2009.

_____
DWAYNE GOODEN
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION